UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARIANNE GILMORE *and* THOMAS J. GILMORE,<br>　*Plaintiffs*,<br>　v.<br>TEACHERS INSURANCE COMPANY,<br>　*Defendant*. | Civil No. 3:18cv1856 (JBA)<br><br>September 4, 2019 |

**RULING GRANTING DEFENDANT'S MOTION TO DISMISS**

This is one of the many "so-called 'crumbling concrete cases'" brought by Connecticut residents, whose homes were allegedly built with tainted concrete and whose insurers declined to cover the resulting structural damage. *Valls v. Allstate Ins. Co.*, 919 F.3d 739, 741 (2d Cir. 2019).

Here, Marianne and Thomas Gilmore ("Plaintiffs") contend that Teachers Insurance Company ("Defendant") wrongfully denied a property damage claim concerning the deterioration of their home's foundation. Plaintiffs allege that Defendant breached the contract between them, breached the implied covenant of good faith and fair dealing, and violated the Connecticut Unfair Insurance Practices Act ("CUIPA") and the Connecticut Unfair Trade Practices Act ("CUTPA"). Defendant now moves to dismiss all claims.

For the reasons that follow, Defendant's Motion to Dismiss is granted.

**I. Background**

The following facts are drawn from Plaintiffs' First Amended Complaint and from the insurance policies attached and incorporated by reference.

Plaintiffs own a home in Tolland, Connecticut. (First Am. Compl. [Doc. # 15] ¶ 3.) They purchased it on June 22, 2012 and obtained a homeowner's insurance policy from Defendant on

that same day. (*Id.* ¶¶ 3, 4.) Defendant has continually insured Plaintiffs' home "[a]t all times relevant and material to this claim." (*Id.* ¶ 5.)

Plaintiffs' original insurance policy ("2012 Policy") with Defendant did not include property collapse in its section on "incidental property coverages." (Ex. 1 (2012 Policy) to Def.'s Mot. Summ. J. [Doc. # 18-1] at 11-12.) Rather, the 2012 Policy disclaimed any loss "caused by the settling, cracking, shrinking, bulging or expanding of a building structure," (*id.* at 13), and "loss which results from . . . a defect, a weakness, an inadequacy, a fault or unsoundness in materials used in construction or repair" of the insured property, (*id.* at 17).

In 2013, Defendant updated the terms of its homeowner's insurance coverage and added new language referring to property collapse. (Ex. 2 (2013 Policy) to Def.'s Mot. Summ. J. [Doc. # 18-2] at 14-15.) The revised policy ("Revised Policy") explicitly provided for the coverage of the "collapse of a building" if caused by decay where "no 'insured' knew of or could reasonably be expected to suspect the presence of such decay prior to collapse," (*id.* at 14), or if caused by "the use of defective materials or methods in construction . . . if the collapse occurs during the course of construction," (*id.* at 15). The Revised Policy defined "collapse" as an "abrupt caving in, falling in, falling down, or giving way that prevents the building or the part of the building from being occupied for the purpose for which it was intended just before" the collapse. (*Id.* at 15.) But the Revised Policy specifically excluded "bending, bowing, bulging, cracking, . . . sagging, settling, or

shrinkage" from this definition.[1] (*Id.*) This language has remained in effect through the present. (*See* Ex. 7 (2018 Policy) to Def.'s Mot. Summ. J. [Doc. # 18-7] at 14-15.)

In 2017, Plaintiffs brought in a contractor to inspect the foundation of their home and analyze the concrete used. (First Am. Compl. ¶¶ 6-10.) A petrographic test showed that the foundation contained pyrrhotite, a mineral contaminant that can cause concrete to expand and crack. (*Id.* ¶ 10.) Pyrrhotite-contaminated concrete "deteriorate[s] over time, but will not abruptly collapse." (*Id.* ¶ 24.) Plaintiffs observed that this was consistent with the damage to their home, where the "concrete walls had suffered from a substantial impairment," (*id.* ¶ 15), but were "unable to abruptly collapse because they are anchored at the top with bolts to the house and at the bottom by the basement floor and are compressed" by the house's weight, (*id.* ¶ 23).

Around this time and prior to the completion of the petrographic test, Plaintiffs filed an insurance claim with Defendant for coverage of the foundation damage. (*Id.* ¶ 8.) Defendant sent an insurance adjustor to Plaintiffs' home and then denied the claim on the grounds that "the cracks were caused by settlement and therefore the claim was excluded under the Settling, Cracking, Shrinking, Bulging or Expansion exception" ("Settlement Exception"). (*Id.* ¶ 12.)

---

[1] In its entirety, the Revised Policy provides that "the following are not considered to be in a state of collapse":

  a) a building or a part of a building that has not caved in, fallen in, fallen down, or given way even if it displays evidence of bending, bowing, bulging, cracking, expansion, inadequate load bearing capacity, leaning, sagging, settling, or shrinkage;
  b) a building or a part of a building in danger of caving in, falling in, falling down, or giving way; or
  c) a part of a building that has not caved in, fallen in, fallen down, or given way even if it has separated from another part of the building.

(Revised Policy at 15.)

3

On October 28, 2018, Plaintiffs filed a complaint in Connecticut superior court, claiming that Defendant had wrongfully denied their insurance claim. (Notice of Removal [Doc. # 15] ¶1.) That suit was then removed to the United States District Court for Connecticut on the basis of diversity. (*Id.*) Plaintiffs' suit contains three counts. First, Plaintiffs assert breach of contract, on the basis that Defendant improperly invoked the Settlement Exception when "settlement was not the cause of the foundation cracks." (First Am. Compl. ¶ 12.) Second, they claim that Defendant breached the implied covenant of good faith and fair dealing. Third, Plaintiffs allege that Defendant violated CUIPA and CUTPA.

Defendant moves to dismiss all three counts under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted.

## II. Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 98 n.13 (2d Cir. 2017) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

### A. Breach of Contract

Plaintiffs allege that Defendant must accept their claim for foundation deterioration under the policy's "Incidental Property Coverages" section because the deterioration was caused by "decay that is hidden from view." (First. Am. Compl. ¶¶ 15-17.) Plaintiffs do not specify whether the 2012 Policy or Revised Policy applies to their claim but, for the purpose of this

4

motion, the Court will assume that Plaintiffs have asserted their rights under both iterations of the policy.

The thrust of Plaintiffs' argument is that the foundation deterioration qualifies as a form of "collapse," even if it is not an "abrupt collapse." (*Id.* ¶ 21.) Two courts in this district have had prior occasion to interpret identical language used in Defendant's standard home insurance policies, and they have done so in nearly identical circumstances. In *Huschle v. Allstate Ins. Co.*, No. 3:18-CV-00248 (JAM), 2019 WL 1427143 (D. Conn. Mar. 29, 2019), the court considered a breach of contract claim against Teachers Insurance Company by a different pair of Tolland homeowners and concluded that neither version of the insurance policy covered concrete decay. As the *Huschle* court noted, the 2012 Policy "does not explicitly address collapse" but "excludes losses 'caused by . . . cracking' or losses 'which result[] from' defective construction materials." *Id.* at *4 (alteration in original). Agreeing with other courts in this District, the *Huschle* court held "that a crumbling foundation is not covered when an all-risk policy excludes coverage for cracking." *Id.* (citing *Kim v. State Farm Fire & Cas. Co.*, 262 F. Supp. 3d 1, 8–9 (D. Conn. 2017) (Bryant, J.), *aff'd*, 751 F. App'x 127 (2d Cir. 2018)). In doing so, the court rejected plaintiffs' argument that "a loss 'caused by' cracking differs from one that 'consists of' cracks." *Id.*

The *Huschle* court also analyzed the Revised Policy but concluded that plaintiffs fared no better under its terms. The court observed that the Revised Policy's "language clarifying that a collapse has not occurred when a building is only 'in danger' of falling in makes clear that an ongoing condition making collapse an imminent possibility is insufficient to constitute an actual collapse." *Id.* The *Huschle* court thus held that continued foundation deterioration was not covered under the Revised Policy's "abrupt" occurrence language, and so dismissed plaintiffs' breach of contract claim. *Id.*

*Corteau v. Teachers Ins. Co.*, 338 F. Supp. 3d 88, 92 (D. Conn. 2018) (Shea, J.), interpreted these policies in the same manner. First, the *Courteau* court determined that "the terms of the [2012] Policy unambiguously foreclose coverage of the plaintiffs' claim" because of the presence of the Settlement Exception. *Id.* at 93. The *Courteau* court then examined the Revised Policy and its use of the term "collapse." *Id.* at 97. It ruled that the "steady deterioration and cracking of the concrete foundation" did "not constitute 'an abrupt caving in, falling in, falling down, or giving way of the building or . . . part of the building that prevents the building or the part of the building from being occupied." *Id.* at 97.

The reasoning of *Huschle* and *Corteau* is persuasive. Under this shared interpretation, neither policy appears to cover the Plaintiffs' alleged damage. Plaintiffs describe this damage as a "cracking and expansion of the foundation walls," (First. Am. Compl. ¶ 35), which the 2012 Policy disclaims through its Settlement Exception. Plaintiffs also concede that "[a]brupt collapse of [their] foundation [is] not possible, and abrupt collapse of [the] basement foundation wall will not occur under any reasonably expected circumstances," (*id.* ¶ 31), precluding coverage under the plain language of the Revised Policy.

Despite Plaintiffs' acknowledgement that "coverage requires that the loss be the result of an abrupt collapse, a condition not likely to occur," (*id.* ¶ 55), they nonetheless argue that the coverage limitations contained in the Revised Policy are "illusory" and therefore "void as violating public [p]olicy."[2] (*Id.* ¶¶ 58, 59.) Further, Plaintiffs contend that this Court cannot resolve the issue of whether coverage is illusory on a motion to dismiss because it is a "question

---

[2] Plaintiffs do not identify any specific language from the 2012 Policy that is allegedly illusory.

6

for the trier of fact." (Pls.' Opp. to Mot. to Dismiss at 14 (citing *Benedetto v. Wanat*, 79 Conn. App. 139, 150 (2003) (landlord-tenant dispute)).

As an initial matter, the Supreme Court of Connecticut has treated the question of whether insurance coverage is illusory as a matter of law. *See Connecticut Ins. Guar. Ass'n v. Drown*, 314 Conn. 161, 192 (2014) (holding that insurance coverage was not illusory). As such, the Court may properly consider this issue on a motion to dismiss. *See Tallmadge Bros. v. Iroquois Gas Transmission Sys., L.P.*, 252 Conn. 479, 495 (2000) (observing that Connecticut courts engage in plenary review of contracts where the use of definitive language "make[s] the interpretation of that language a question of law").

Insurance coverage is illusory "if it appears that, if any actual coverage does exist, it is extremely minimal and affords no realistic protection to any group or class of injured persons." 7 Couch on Ins. 3d § 101:20 (West 1997). But insurance coverage is not illusory where the exclusion "is narrower than . . . the general grant of coverage." *Drown*, 314 Conn. at 192. Here, the Revised Policy allows for coverage of a collapse where "no 'insured' knew of or could reasonably expected to suspect the presence of such decay prior to collapse," (2013 Policy at 14), or if caused by "the use of defective materials or methods in construction . . . if the collapse occurs during the course of construction," (*id.* at 15). As the court in *Courteau* observed, this coverage could extend to a sudden collapse of a decayed ceiling, even if it would not necessarily extend to gradual deterioration of a foundation. *See Courteau*, 338 F. Supp. 3d at 101 ("[I]f the ceiling of a property abruptly caved in a few inches but the property remained standing, it would still constitute a 'collapse' under the post-2013 Policy if it rendered the property unusable for occupation."). Because the exclusion of an "abrupt collapse" is, in a meaningful way, narrower

7

than Defendant's general grant of coverage for "collapse," the conditions of the Revised Policy are not illusory.

In sum, Plaintiffs have failed to state a claim for breach of contract.

## B. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs next contend that Defendant breached the implied covenant of good faith and fair dealing by "act[ing] intentionally to mislead the Plaintiffs and convince them that the damage to their home was not covered by the Policy." (First. Am. Compl. ¶ 82.)

To maintain a claim for breach of this covenant, Plaintiffs "must plausibly allege that [Defendant] acted in bad faith in wrongfully denying coverage for the alleged loss." *Rudeen v. Allstate Ins. Co.*, No. 3:16-CV-1827 (MPS), 2018 WL 1401978, at *7 (D. Conn. Mar. 20, 2018) (citing *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 794–95 (2013)). "[B]ad faith is not actionable apart from a wrongful denial of a benefit." *Capstone*, 308 Conn. at 798; *accord Valls*, 919 F.3d at 745.

Because Plaintiffs have failed to state a plausible claim that Defendant breached their contract, they cannot claim that they were wrongfully denied coverage. Without that predicate, Plaintiffs' claim that Defendant breached the implied covenant of good faith and fair dealing necessarily fails.

## C. Violation of CUIPA and CUTPA

Plaintiffs allege that Defendant violated CUIPA and CUTPA by participating in the industry-wide "practice of denying coverage for concrete decay claims" and by "failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." (First Am. Compl. ¶¶ 101-02.)

When a defendant's interpretation of a policy exclusion is correct, an insured cannot demonstrate that "application of that interpretation as a general business practice constitute[s] oppressive, unethical or unscrupulous conduct." *Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 378 (2008). If a defendant has properly denied a claim under that interpretation, then "there is no recovery under CUIPA and CUTPA." *Huschle*, 2019 WL 1427143, at *5 (citing *Zulick*, 287 Conn. at 378). That is the case here. Plaintiffs have alleged that their home has suffered substantial impairment—as opposed to abrupt collapse—and so they "have not alleged plausible grounds to conclude that Teachers improperly denied their insurance claim." *Id.*

Because Defendant properly denied coverage under the Settlement Exception, Plaintiffs' CUIPA and CUTPA claim fails and must be dismissed.

### III. Conclusion

Accordingly, Defendant's Motion to Dismiss [Doc. # 17] is GRANTED. The clerk is directed to close the case.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 4th day of September 2019.