UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARIANNE GILMORE *and* THOMAS J. GILMORE, <br> *Plaintiffs*, <br> v. <br> TEACHERS INSURANCE COMPANY, <br> *Defendant*. | Civil No. 3:18cv1856 (JBA) <br><br> January 29, 2020 |

**RULING DENYING PLAINTIFFS' MOTION TO ALTER JUDGMENT**

On September 4, 2019, the Court dismissed Plaintiffs Marianne and Thomas Gilmore's "crumbling concrete" Complaint against Defendant Teachers Insurance for failure to state a claim. (September 4, 2019 Ruling [Doc. # 26] at 1.)[1] Plaintiffs seek reconsideration of this ruling, which they contend is "predicated upon a mistaken understanding of the allegations of [the] Amended Complaint and a mistaken understanding of the plaintiffs' claims concerning the Policy language." (Pls.' Am. Mem. Supp. Mot. to Alter Judgment [Doc. # 34] at 1.) The Court disagrees, and thus DENIES Plaintiffs' motion for the reasons that follow.

Plaintiffs rely on Rule 59(e) of the Federal Rules of Civil Procedure to bring their Motion to Alter or Amend Judgment. (*Id.* at 1.) A motion brought under Rule 59(e) is governed by the same standard as a motion for reconsideration. *See City of Hartford v. Chase*, 942 F.2d 130, 133 (2d Cir. 1991) ("[E]ach seeks to reopen a district court's decision on the theory that the court made mistaken findings in the first instance.") Motions for reconsideration require the movant to set "forth concisely the matters or controlling decisions which [the movant] believes the Court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c)1. The Second Circuit has

---

[1] The Court otherwise assumes the parties' familiarity with the background of this case.

explained that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 4478). This standard is "strict," however, and reconsideration should be granted only if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). If "the moving party seeks solely to relitigate an issue already decided," the court should deny the motion for reconsideration and adhere to its prior decision. *Id.*

Plaintiffs contend that reconsideration is warranted because the Court's "finding concerning illusory coverage, including its finding that the plaintiffs did not identify any specific language from the 2012 policy that is allegedly illusory, is predicated upon a mistaken understanding of the allegations of [the] Amended Complaint and a mistaken understanding of the plaintiffs' claims concerning the Policy language." (Pls.' Am. Mem. at 1.) Plaintiffs direct the Court to provisions of Teachers Insurance Policy HO 00030908, and they repeat various allegations made in their Amended Complaint. (*Id.* at 4-7).

Plaintiffs also argue that the Court was wrong to follow *Corteau v. Teachers Ins. Co.*, 338 F. Supp. 3d 88, 92 (D. Conn. 2018), which interpreted identical contract language and concluded that the 2013 Policy's provisions[2] on "collapse" were not illusory. Specifically, Plaintiffs argue that

---

[2] These provisions provide:

> "We" pay for direct physical loss . . . involving the collapse of a building or a part of a building if the collapse was caused only by one or more of the following:

2

the "Policy treats foundations coverage differently tha[n] coverage for ceilings," and so "coverage for ceilings cannot be used to defeat illusory claims for foundations." (*Id.* at 7.) The thrust of

---

> 1) a Peril insured Against described under Coverage C;
> 2) insect, rodent, or "vermin" damage . . .;
> 3) decay, but only if no "insured" knew . . . ;
> 4) weight of animals, equipment, people, or personal property;
> 5) weight of rain that collects on a roof; or
> 6) the use of defective materials or methods in construction or repair if the collapse occurs during the course of construction or repair.
>
> However, "we" do not pay for loss to . . . foundations . . . caused by a peril described in 2) through 6) above unless the loss is the direct result of the collapse of a building or a part of a building.
>
> With respect to loss caused by a peril described in 2) through 6) above, . . . foundations . . . are not considered to be buildings or parts of buildings[.]

(Ex. 2 (2013 Policy) to Def.'s Mem. Supp. Mot. to Dismiss [Doc. # 18-2] at 10-11.) The policy further provides:

> [C]ollapse of a building or a part of a building means an abrupt caving in, falling in, falling down, or giving way of the building or the part of the building that prevents the building or the part of the building from being occupied for the purpose for which it was intended just before caving in, falling in, falling down, or giving way; and . . . the following are not considered to be in a state of collapse:
>
>> a) a building or a part of a building that has not caved in, fallen in, fallen down, or given way even if it displays evidence of bending, bowing, bulging, cracking, expansion, inadequate load bearing capacity, leaning, sagging, settling, or shrinkage;
>> b) a building or a part of a building in danger of caving in, falling in, falling down, or giving way; or
>> c) a part of a building that has not caved in, fallen in, fallen down, or given way even if it has separated from another part of the building.

(*Id.* at 11.)

Plaintiffs argument is that because the 2013 Policy specifically included the term "foundations" in a list of structures that receive narrower collapse coverage than the building itself, the Policy creates an independent obligation for Defendant to provide collapse coverage for foundations in at least some conceivable circumstance.

Finally, Plaintiffs suggest that a recent pair of Connecticut Supreme Court cases on crumbling concrete lend support to their argument that the collapse provisions of the 2013 Policy were illusory. (*See id.* at 8-12.) In their view, *Jemiola v. Hartford Casualty Insurance Co.*, No. 19978, 2019 WL 5955904 (Conn. Nov. 12, 2019), and *Karas v. Liberty Insurance Corp.*, No. 20149, 2019 WL 5955947 (Conn. Nov. 12, 2019), stand for the proposition that "an inquiry into whether insurance coverage is illusory turns on whether the policy provides unitary or separate coverage for the building superstructure and foundation." (Pls.' Am. Mem. at 8.)

In opposition, Defendant contends that Plaintiffs' request for reconsideration does not satisfy the legal standard for relief, as "Plaintiffs' arguments merely rehash ones they made, repeatedly, in their" prior briefing. (Def.'s Opp. [Doc. # 29] at 3.) Defendant also contends that *Jemiola* and *Karas* support the Court's ruling, as they reject expansive readings of similar homeowner insurance policies. (Def.'s Am. Opp. [Doc. # 33] at 3-4.)

The Court concludes that none of Plaintiffs' arguments justify reconsideration. To begin, Plaintiffs have not identified any facts that the Court has overlooked. Plaintiffs assert that the Court erred in stating that "Plaintiffs do not identify any specific language from the 2012 Policy that is allegedly illusory." (*See* Pls.' Am. Mem. at 1.) However, the policy to which Plaintiffs now refer—HO 00030908—was issued in 2013, and was extensively discussed in the Court's ruling. (*See* September 4, 2019 Ruling at 6-8.)

The Court also agrees with Defendant that Plaintiffs are attempting to relitigate the merits of the case by arguing that *Courteau* incorrectly interpreted the Teachers Insurance Policy and that this Court was thus incorrect to follow it. Such arguments are improper for reconsideration, as Plaintiffs already had the opportunity to rebut *Courteau*'s conclusions in their original argument as to illusory coverage. (*See* Pls.' Opp. to Def.'s Mot. to Dismiss [Doc. # 21] at 14-31.) As the Second Circuit has made clear, Plaintiffs may not use this reconsideration motion as a "vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted).

Finally, although a change in intervening law may be grounds for reconsideration, the recent developments in Connecticut law are not in Plaintiffs' favor. In both cases cited by Plaintiffs, the Connecticut Supreme Court ruled against the homeowners and concluded that their insurance policies did not cover the deterioration of concrete foundations.

In *Jemiola*, the Connecticut Supreme Court considered a homeowner's insurance policy that defined the term "collapse" as "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose." 2019 WL 5955904, at *1. The Connecticut Supreme Court concluded that this language "unambiguously foreclose[d] coverage" of the slow deterioration of a pyrrhotite-contaminated concrete foundation. *Id.* Given that the language of the Teachers Insurance Policy is substantially similar to the *Jemiola* policy language, this Court disagrees with Plaintiffs' view that *Jemiola* justifies reconsideration of the September 4, 2019 ruling.

*Karas* also fails to help Plaintiffs. There, the Connecticut Supreme Court addressed whether a policy's exclusion for loss to a "foundation" would "render coverage under the policy

5

illusory," and it ruled that "[u]nless the exclusionary language eliminates coverage altogether, it does not render the coverage illusory." *Karas*, 2019 WL 5955947, at *18.³ That is the case here, where the Teachers Insurance Policy generally covers structural collapse but "do[es] not pay for loss to . . . foundations . . . caused by a peril [previously] described . . . unless the loss is the direct result of the collapse of a building or a part of a building." (2013 Policy at 11.) Although this exclusion may limit the collapse coverage afforded by the policy, it does "not eviscerate all coverage under the policy." *Karas*, 2019 WL 5955947, at *18 (internal alteration and quotation marks omitted).⁴ As such, the Court must conclude that *Karas* lends support to its original ruling that the 2013 Policy did not provide illusory coverage.

Accordingly, the Court DENIES Plaintiffs' Motion to Alter Judgment [Doc. # 22].

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of January 2020.

---

³ *Karas* also offered a definitive construction of the term "collapse," and concluded that the "'substantial impairment of structural integrity' standard is applicable" and that "standard requires a showing that the building is in imminent danger of falling down or caving in, that is, in imminent danger of an actual collapse." 2019 WL 5955947, at *19. This Court notes that this definition is broader than the definition of "collapse" under the 2013 Teachers Insurance Policy, and that Plaintiffs would not be able to recover even under this more expansive definition because they have stated that their property is "unable to abruptly collapse." (Am. Compl. ¶ 23.)

⁴ Plaintiffs take the position that this "foundation" exception creates an independent grant of coverage, and so should be analyzed independently for the purposes of determining whether such coverage is illusory. But even if the Court were to read this exception divorced from its context, the provision plainly limits coverage to foundation collapse that is caused by a larger building collapse—a circumstance that is realistically possible, but not claimed here.

6